AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>CELLULAR TELEPHONE ASSIGNED CALL NUMBER<br>(513) 687-5062 | )<br>)<br>)<br>)<br>)<br>) Case No.    1:23-mj-998 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A (incorporated by reference). This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41. Because the government has satisfied the requirements of 18 U.S.C. § 3122, this warrant also constitutes an order under 18 U.S.C. § 3123.

located in the _____ District of   NEW JERSEY   , there is now concealed *(identify the person or describe the property to be seized)*:

   SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❑ contraband, fruits of crime, or other items illegally possessed;

❑ property designed for use, intended for use, or used in committing a crime;

❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922(o) | Illegal Possession of a Machinegun |

The application is based on these facts:
   SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

☑ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

To ensure technical compliance with 18 U.S.C. §§ 3121-3127, the warrant will also function as a pen register order. I therefore certify that the information likely to be obtained is relevant to an ongoing criminal investigation conducted by ATF. See 18 U.S.C. §§ 3122(b), 3123(b). /s/Ryan A. Keefe

_____
*Applicant's signature*

Special Agent Brandon Stahlhut, ATF
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ FaceTime _____ *(specify reliable electronic means)*

Date:   **Dec 5, 2023**

City and state:   Cincinnati, Ohio

_____
Karen L. Litkovitz
**United States Magistrate Judge**

## AO 106 ATTACHMENT

*See* Affidavit in Support of an Application for a Search Warrant. To ensure technical compliance with the Pen Register Statute, 18 U.S.C. §§ 3121-3127, this warrant also functions as a pen register order. Consistent with the requirement for an application for a pen register order, I certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the Federal Bureau of Investigation. *See* 18 U.S.C. §§ 3122(b), 3123(b).

I declare under penalty of perjury that the foregoing is true and correct.

December 5, 2023

_____
DATE

*s/ Ryan A. Keefe*
_____
RYAN A. KEEFE
Assistant United States Attorney

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (513) 687-5062 | **CASE NO.** 1:23-mj-998<br><br>**UNDER SEAL** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Brandon Stahlhut, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **513-687-5062** (the "**TARGET CELL PHONE 2**"), whose service provider is CELLCO Partnership DBA Verizon Wireless, a wireless provider that accepts service of process at 51 ImClone Drive, Branchburg, New Jersey, 088760. The targeted cell phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3.    I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, and have been so employed since February 2019. As a part of my training with the ATF, I graduated from the Federal Law Enforcement Training Center, Criminal Investigator Training Program, located in Glynco, Georgia. I also graduated from the ATF Special Agent Basic Training Academy, located in Glynco, Georgia. In my career with the ATF, I have been assigned to the Cincinnati Field Office in the Southern Judicial District of Ohio. Prior to my employment with ATF, I was a member of the United States Secret Service in Washington D.C. where I served as a Uniformed Division Police Officer under the Presidential Protective Division. I was employed in that capacity from April 14, 2009, to February 4, 2019. I am also a graduate of Northern Kentucky University, where I received a bachelor's degree in political science in 2007.

4.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other police officers, agents, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.    Based on the facts set forth in this affidavit, there is probable cause to believe that Keiylon KENNEDY has violated 18 U.S.C. § 922(o) (Illegal Possession of a Machinegun). There is also probable cause to believe that the requested location information will constitute evidence of KENNEDY's crimes.

6.    The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, see 18 U.S.C. § 2711(3)(A)(i).

2

## **PROBABLE CAUSE**

### A. Introduction

7.      The Alcohol, Tobacco, and Firearms (ATF) and the Cincinnati Police Department (CPD) are conducting an assault investigation committed by Keiylon KENNEDY and others. As I explain in more detail below, KENNEDY and others are suspected of committing violent offenses while possessing firearms, equipped with machinegun conversion devices.

8.      I am submitting this affidavit in support of a search warrant for location data associated with a phone number (**513) 687-5062**, herein referred to as **TARGET CELL PHONE 2,** for which there is probable cause to believe is used by KENNEDY and was used by him at the time of the firearms offenses.

### B. Introduction

9.      The Alcohol, Tobacco, and Firearms (ATF) and the Cincinnati Police Department (CPD) are investigating suspected firearms trafficking and illegal possession of machineguns by Keiylon KENNEDY and others.

3

Case 2:23-cv-00988-KSM SEALED Document 50-3 SEAL Page Filed 03/04/24 Page 232 of 49



Case 2:23-mj-09098-KSEALED Document 9 Filed 503/08/24 Page Filed: 08/04/24 Page 23 of 49 PAGEID #: 169





That device was collected by the affiant.



**D. On September 29, 2023, the Crime Gun Intelligence Center conduct a traffic stop on the suspect vehicle ████████████████████████████████████████.**

20.    On September 29, 2023, the Crime Gun Intelligence Center were conducting surveillance in the area of Paddock and Laidlaw and located ██████████████ ████████ a silver Hyundai Sonata bearing Ohio temporary plate of "R032747". Uniformed CGIC officers conducted a traffic stop on the vehicle, driven by and registered to ████████████ Narcotics were recovered from the female passenger's undergarments, and she was subsequently arrested and charged with two counts of Trafficking in Drugs and Possession of Drugs. A phone number was written on the inside of the recovered narcotic bindles ████████. Officers called the phone number and the phone on the front driver's floorboard, where ████████ had been sitting, began to ring. ████████ gave the same number for ████████ as her emergency contact information and stated that the phone recovered from the floorboard was ████████. An additional phone was confiscated from ████████ s right hand as she was detained, which ████████ ████████ verified was her own. On October 10, 2023, CGIC Officer Carver obtained a search warrant for the contents of both ████████ and ████████ phones.

21.    On October 3, 2023, the affiant obtained a search warrant signed by Hamilton County Common Pleas Judge Jody Luebbers for Instagram account "Rice Steppa", Instagram ID: 17919149060. In the Instagram return records from Instagram ID: 17919149060, the registered email address is keiylonkennedy67@gmail.com with a verified phone number of (513)

9

649-7921. The email address "keiylonkennedy67@gmail.com" is registered to a Mr. Keiylon KENNEDY (SSN: ▮▮▮▮▮▮). Officers verified the ownership of the Instagram account "Rice Steppa" via comparison of images and videos included in the Instagram return to that of Mr. Kennedy's Ohio Driver's License and Hamilton County mugshot photographs.

**C. On October 16, 2023, at 7:10 PM the City of Cincinnati Emergency Communications Center received a call reporting Keiylon KENNEDY's location.**

22.     On October 16, 2023, the City of Cincinnati Emergency Communications Center received a call reporting Keiylon KENNEDY's location.  The caller advised Mr. Kennedy was observed with a firearm and claimed he had a murder charge and was on the run. Cincinnati Police District Three officers responded to the location and located and arrested Kennedy after he fled from officers on foot. District Three officers recovered a loaded 9mm handgun from Mr. Kennedy's person. Also recovered from Mr. Kennedy was a black iPhone cellular device. Mr. Kennedy had two misdemeanor menacing warrants and was charged with obstructing official business and carrying a concealed weapon.

23.     Mr. Kennedy was transported to the Criminal Investigation Section for questioning ▮▮▮▮▮▮. The affiant and Detective Beebe entered the room to start the interview, and Mr. Kennedy invoked his right to council. Mr. Kennedy was transported to the Hamilton County Justice Center.

**D. October 17, 2023, CGIC officers monitor Hamilton County Justice Center jail calls to ▮▮▮▮▮▮.**

24.     Officers monitored Hamilton County Jail Calls for any calls placed to the phone number associated with ▮▮▮▮▮▮. On October 16, 2023, inmate Keiylon KENNEDY made several unanswered calls to ▮▮▮▮'s number. Officers begin to monitor

10

Mr. Kennedy's jail calls. Officers noted that his first call was to his ████████████, during which call he obtained the phone number for his "brother" a.k.a. ████████. In his second call, his mother three-way called ████████ who inquired as to the details of Mr. Kennedy's arrest. Mr. Kennedy shared that in addition to being arrested, he was also transported to be interviewed by homicide detectives but that he declined to speak without a lawyer. During the ten days Mr. Kennedy spent in the Justice Center, Mr. Kennedy called ████ directly three times and was called via-a third party at least once. Officers located ████ public social media pages (Facebook "████████" and Instagram "████████") and monitored these for any activity.

**E. October 17, 2023, Detective Jenkins provides CGIC officers with Mr. Keiylon KENNEDY's Instagram return, obtained by Det. Jenkins on October 3, 2023.**

27.      On the same day, Mr. Kennedy posted on Instagram four pictures of himself wearing a light pink jacket, a black face mask, ripped black jeans, and black and blue shoes while posing with a green camo backpack, a rifle, and a pistol (see included photos).



28.      Also included in the Instagram search warrant was an up-close picture of a rifle,

on top of a backpack and pink clothing item (see included photo). █████████

████████████████████████████████████████████████████

13







30. In the Instagram return, multiple conversations were recovered of Mr. Kennedy attempting to purchase or trade for a Glock switch.

31. On September 25, 2023, Mr. Kennedy messaged Instagram account "███████████", Instagram ID:████████. Officer Carver was able to identify the account "████████" as belonging to ███████████(SSN:███████) based on the photographs and videos temporarily posted to the account's story. Officer Carver compared the below screenshot from the image posted by "████████" (left) with ████████Hamilton County Mugshots (center and right).

15



32. On September 25, 2023, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mr. Kennedy message ▮▮▮▮ asking for a Glock switch (referred to as "a button") as soon as possible in exchange for whatever ▮▮▮▮ wants. Mr. Kennedy stated, "Need button sap got whatever". ▮▮▮▮ replied "Aight I'm finna see"; shortly after, he updated Mr. Kennedy that the subject he was attempting to connect Mr. Kennedy with isn't active online and called Mr. Kennedy to discuss further. See attached Instagram printout of described conversation.



16

33.     On September 26, 2023, Mr. Kennedy messaged Instagram account
'▮▮▮▮▮▮' , Instagram ID: ▮▮▮▮▮▮. Officer Carver was able to identify the account
"▮▮▮▮▮" as belonging to ▮▮▮▮▮▮▮▮▮ (SSN: ▮▮▮▮▮) based on the
photographs and videos posted to the account. . Officer Carver compared the screenshot (below
left) of an image posted by ▮▮▮▮▮ and ▮▮▮▮▮ juvenile mugshot (below
right).



34.     On September 26, 2023, Mr. Kennedy messaged ▮▮▮▮▮ asking him for a
switch (referred to as a "glitch"). Mr. Kennedy asked, "Wer da glitches gang"? ▮▮▮▮▮
stated that he currently did not have any switches due to being on electronic monitoring but
directed Mr. Kennedy to an online application called "dh gate" that sells switches. Ten seconds
later, Mr. Kennedy started a video chat with ▮▮▮▮▮ which lasted five minutes and then
▮▮▮▮▮ sent his phone number. No further messages were included in the search warrant
return. See attached Instagram printout of described conversation.

17



35.    On September 27, 2023, Mr. Kennedy messaged Instagram account

"███████", Instagram ID: ███████. Officer Carver was able to identify the account

"███████" as belonging to ███████ (SSN: ███████ based on the photographs

and videos posted to the account. Officer Carver compared the screenshot (below left) of an

image posted by "███████" and ███████ juvenile mugshot (below right).

18

36.     On September 27, 2023, Mr. Kennedy messaged [REDACTED] telling him to contact an associate that he had a rifle (referred to as a "chop") or another Glock to trade for a switch (again referred to as a "button"). Mr. Kennedy stated "Tell lil bra I got ah chop r anotha Glock fa dat button". [REDACTED] liked the message but told Mr. Kennedy to talk to the associate directly. Mr. Kennedy implied that he would but informed him that the associate had not added him back, presumably on a social media account. [REDACTED] told Mr. Kennedy that he would ask for him. No further messages were included in the search warrant return. See attached Instagram printout of described conversation.



37.     Starting October 1, 2023, there were multiple Instagram conversations in which Mr. Kennedy stated that he now had a switch.

38.     In the Instagram return, Mr. Kennedy exchanged messages with Instagram account "[REDACTED]", Instagram ID: [REDACTED]. Officer Carver was able to identify

19

the account ████████████████" as belonging to ████████████████ (SSN: ████████ based on the photographs and videos posted to the account and the phone number ████████ shared in the messages. Officer Carver ran the given phone number through multiple databases, which associated the phone number ████████ with ████████████. Officer Carver then compared the images and videos posted by "████████" (screenshot below on the left) and ████████████ Ohio Driver's License photo (below right).



39.    On October 1, 2023, ████████████ messaged Mr. Kennedy asking him for a firearm (referred to as a "strap"). ████████████ said, "I need a strap still brotha". Kennedy responded, swearing on his deceased friend's name, that he had three Glocks, a rifle (referred to as a "chop") and a Glock switch. Kennedy said, "I got 3 glocks n a chop onrice…N I gotta switch". The conversation continued to detail the monetary exchange and payment plan for the Glock. ████████████ stated that he would pay Mr. Kennedy a total of $400 for the Glock and swore on his mother that over the next three weeks he would pay in one hundred and/or two hundred increments. ████████████ said "either this weekend or sum lemme do a down payment on it I'll give u 400 for the Glock omm I can give u 100 thi.s week and 200 next week

20

for it and the week after another $100". Mr. Kennedy agrees, in shorthand, saying okay let me

know. See attached Instagram printout of described conversation.



40.     In the Instagram return, Mr. Kennedy exchanges messages with Instagram

account "▮▮▮▮▮▮", Instagram ID: ▮▮▮▮▮▮▮▮. Officer Carver was able to identify the

account "▮▮▮▮▮▮" as belonging to ▮▮▮▮▮▮▮▮▮▮ (SSN: ▮▮▮▮▮▮) based on the

photographs and videos posted to the account. Officer Carver compared photographs posted by

"▮▮▮▮▮▮" (screenshot below, left) to ▮▮▮▮▮▮▮ Hamilton County Juvenile Mugshot

(below, right).



21

41.      Additionally, there are messages between ▮▮▮▮ and Mr. Kennedy ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Mr. Kennedy accuses ▮▮▮▮ to have been on the phone with the police ▮▮▮▮.

Mr. Kennedy states, "N Type opp shit Yall on got niggas Otp da whole time on some police

shit". ▮▮▮▮ responds, "▮▮▮▮onna phone wit him nigga I called yhu ta tell yhu". ▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

42.      On October 1, 2023, Mr. Kennedy bragged that he got a switch, referred to as a

"glitch". Mr. Kennedy sent, "Got this glitch" and ▮▮▮▮ liked the message. See attached

Instagram printout of described conversation.



43.      On October 2, 2023, Mr. Kennedy exchanged messages with Instagram account

"▮▮▮▮▮▮", Instagram ID: ▮▮▮▮. Officer Carver was able to identify the account

"▮▮▮▮▮▮" as belonging to ▮▮▮▮ (SSN: ▮▮▮▮) based on the

22

photographs and videos posted to the account. Officer Carver compared pictures posted by

"█████████" (below, left) and ████████ Hamilton County mugshot photo (below, right).



44.      Mr. Kennedy appeared to be instigating a confrontation between himself and ████

████ ██████████████████████████ Mr. Kennedy told █████████ that he's by ████████

house since ████████ and his associates were lying in a group chat. Mr. Kennedy stated that he

had a switch ("switchy") and a rifle ("chop"), and ████████ can pick which he uses. ████████

declined and asked if Mr. Kennedy is still in Bondhill. Mr. Kennedy says he's in Roselawn by

Woodward High School and that they will see him. Mr. Kennedy said that they were easy to kill

and not to play with him. See below Instagram printout of described conversation.

23



45. In the Instagram return, multiple conversations were recovered of Mr. Kennedy selling, purchasing and/or trading firearms.

46. On September 26, 2023, Mr. Kennedy exchanged messages with Instagram account "███████", Instagram ID: ███████. Officer Carver was able to identify the account "███████" as belonging to ███████████ (SSN: ██████) based on the photographs and videos posted to the account and the phone number ███████ shared in the messages. Officer Carver compared photographs (below, left) posted by "███████" and compared them to ███████ BMV picture (below, right). Additionally, Officer Carver ran the phone number provided by "███████", ███████ through multiple databases and all associated ███████ with the given phone number.

24



47.     On September 26, 2023, ████████████████████, ████████ checked in on Mr. Kennedy who confirmed that he's okay and that people aren't going to play with him.

████████ The conversation continued and ████████ offered Mr. Kennedy two Glocks. Mr. Kennedy asked if that was in exchange for his rifle or "chop". ████████ confirmed it was. Mr. Kennedy inquired as to what caliber the Glock was and ████████ said that he'll find out. No further messages were included in the search warrant return. See attached Instagram printout of described conversation.

25





48.     On September 26, 2023, Mr. Kennedy exchanges messages with Instagram account ▮▮▮▮▮▮▮▮▮▮", Instagram ID: ▮▮▮▮▮▮▮. Officer Carver was able to identify the account ▮▮▮▮▮▮▮▮▮▮" as belonging to ▮▮▮▮▮▮▮ (SSN: ▮▮▮▮▮▮▮ based on the photographs and videos temporarily posted to the account's story and the phone number ▮▮▮▮▮ shared in the messages. Officer Carver ran the phone number provided by "▮▮▮▮▮▮▮", ▮▮▮▮▮▮, through multiple databases which associated the phone number to ▮▮▮▮▮▮▮ Officer Carver was then able to compare the BMV photograph for ▮▮▮▮ to the now unavailable photographs and videos temporarily posted to "▮▮▮▮▮▮▮▮" Instagram story.

49.     ▮▮▮▮▮ messaged Mr. Kennedy asking for a firearm or "heat". Mr. Kennedy asked if he was trying to trade. ▮▮▮▮▮ tells him to "find me ah Glizzy" (a Glock). Mr. Kennedy asked what he's got and ▮▮▮▮▮ explained he has a Glock and an assault rifle (AR)

26

but he lets his dad use the Glock ("Glizzy") and he keeps the rifle at home but needed another firearm to carry on his person. Mr. Kennedy called [REDACTED] to presumably discuss the details. See attached Instagram printout of described conversation.



## F. October 17, 2023, Detective Ashley Jenkins obtained a search warrant for the contents of Keiylon KENNEDY's recovered cellular device.

50. In the Instagram return records from Instagram ID: 17919149060, Kennedy provides the above-described phone number (513) 978-8147 multiple times as the number to contact him in messages starting September 27, 2023 (see three attached print outs).

27





**G. October 17, 2023, Detective Ashley Jenkins obtained a search warrant for the contents of Keiylon KENNEDY's recovered cellular device.**

51.     On October 17, 2023, Detective Jenkins obtained a search warrant signed by Hamilton County Common Pleas Judge Tom Heekin for the contents of Mr. Kennedy's recovered cellular device. Officers recovered from the cell phone download multiple photos of Mr. Kennedy posing with and sending pictures of firearms and Glock switches (see attached photos). ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ In the photo, a firearm with an extended magazine and a switch can be seen sticking out of Mr. Kennedy's pant's pocket.



29





## H. October 24, 2023, Keiylon KENNEDY jail call referencing a Glock switch.

52.     On October 24, 2023, Mr. Kennedy made a monitored jail call to ███████ his girlfriend. During the call, ███████ revealed to Mr. Kennedy that the male he saw her with in the recent past was "█████". Mr. Kennedy appeared to be angered that his girlfriend was with another male and due to the calls being recorded he could not say anything too

incriminating. Despite being monitored, Mr. Kennedy described how he would have used a Glock switch to shoot and kill "███████" had he known his identity at the time. Mr. Kennedy said, "I can't even say what I want to…boy…Switchy! The fuck is you talking about?". ███████ told him, "No, don't do that". Mr. Kennedy replied, "Switchy" then describes how he would handle a hypothetical interaction with the male subject. Mr. Kennedy ranted, "Where you going? Uh uh. Homeboy come're. Switchy!" He lucky I ain't know that [at the time]. He lucky cuz I had (unintelligible) for you bruh". It is the Affiant's training and experience that Mr. Kennedy was referring to a Glock switch, which turns a semi-automatic Glock pistol into an automatic weapon/machine gun. Often these devices are given slang nicknames such as "switch", "switchy", "glitch", and/or "button".

**I.      On December 1, 2023, police were dispatched to 2184 Clara Street, Cincinnati, Ohio 45204 for a Felonious Assault and Strangulation investigation.**

53.      On December 1, 2023, the Cincinnati Police Department was notified of a possible shooting at 2184 Clara Street, Cincinnati, OH 45204. ███████████ called police and initially stated that ██████ shot at ███████ and then fled on foot into the woods. Additional suspect information was broadcasted for a black male (Keiylon Kennedy) nineteen years of age, wearing a gray jacket.

54.      The Cincinnati Police Department arrived on scene and recovered three .40 caliber casings from 2184 Clara Street. Detective Bryan Delk interviewed ███████████  who stated that Mr. Kennedy pushed ██████ to the ground and began choking her. During ███████████ interview with Det. Delk, ██████ ███████ stated that when ████ attempted to intervene, Mr. Kennedy then pulled out a

firearm and fired several shots at ▓▓▓▓▓ (who was not struck). A police canine was deployed in an attempt to track the suspect but was unsuccessful.

55. While the suspect was at large, police received a call from an unidentified family member stating that Mr. Kennedy called them and threatened to kill himself. The subject was calling from (513) 687-5062 **(TARGET CELL PHONE 2)**, which is associated with Mr. Kennedy via multiple databases. The listed phone number is associated with Mr. Kennedy via Cincinnati Police Department's Records Management System (RMS) from a misdemeanor Telecommunications Harassment charge filed against Mr. Kennedy on July 9, 2023. Additionally, **TARGET CELL PHONE 2** is listed for Mr. Kennedy's CashApp account ("Hothead Kilo, $Longliverice6). The CashApp account displays the same profile picture that Mr. Kennedy utilized on his Facebook account and sent in private Instagram messages (see below).

56. On the morning of December 5, 2023, I received information from Cincinnati Police Department (CPD) Detective Delk that Keiylon KENNEDY contacted ▓▓▓▓▓▓ ▓▓▓▓ through ▓▓▓▓▓ to pass along the message that "he wanted his stuff or things are going to get nasty." ▓▓▓▓▓▓ stated that ▓ interpreted this to be a threat and that ▓ is scared to be in ▓ home. Based on the affiant's training and experience and knowledge of the investigation, particularly that KENNEDY is suspected of shooting at ▓▓▓▓ and strangling ▓▓▓▓ on December 1, 2023, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ I believe this to be an exigent threat to ▓▓▓▓▓▓ and ▓▓▓▓▓▓

32



57. It is the affiant's training and experience that cellular devices and communications are commonly used to facilitate and communicate about criminal offenses especially in crimes which are conspiratorial in nature. The affiant is also aware cellular devices transmit location information during electronic communications which may aid in identifying the user's location. The affiant believes Keiylon KENNEDY may have been in possession of the above-described cellular device at the time of the firearm offenses and may have used this number to communicate with co-conspirators and/or others regarding the offense. The affiant seeks the above information to recover any evidence of Keiylon KENNEDY's involvement in the offense, to identify any co-conspirators and/or witnesses, to continue the investigation and aid in the prosecution of those involved.

**F. Verizon likely has relevant evidence.**

58.     In my training and experience, I have learned that Verizon is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

59.     Based on my training and experience, I know that Verizon can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Verizon's network or with such other reference points as may be reasonably available.

60.     Based on my training and experience, I know that Verizon can collect historical and prospective cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers

34

involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers, such as Verizon, typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phone's user or users.

### AUTHORIZATION REQUEST

61.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

62.     I further request that the Court direct Verizon to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Verizon, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

63.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify

confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

64.     I further request that the Court direct Verizon to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Verizon. I also request that the Court direct Verizon to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon services, including by initiating a signal to determine the location of the Target Cell Phone on Verizon's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

65.     I further request that this Court order that Verizon not to notify the subscriber of the existence of the warrant. The requested warrant relates to an ongoing investigation which involves the proactive use of cooperating individuals. I believe that notification would result in flight from prosecution, the destruction of evidence, harm to cooperating individuals, or otherwise seriously jeopardize this investigation. *See* 18 U.S.C. § 2705(b)(2), (3), (5).

66.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

67.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Brandon A. Stahlhut
Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives

Subscribed and sworn to before me on this __**5th**__ day of December, 2023

Karen L. Litkovitz
United States Magistrate Judge

37

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **(513) 687-5062** (the "Target Cell Phone 2"), whose wireless service provider is CELLCO Partnership DBA Verizon Wireless ("Verizon"), a company whose Registered Agent accepts service of process at 51 ImClone Drive, Branchburg, New Jersey, 088760.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of Verizon, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

**ATTACHMENT B**

**Particular Things to be Seized**

I.     **Information to be Disclosed by Verizon Wireless (the "Provider")**

1.  *Historical and Subscriber Information.* To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **September 20, 2023 to present:**

    a.  The following information about the customers or subscribers of the Account:

        i.     Names (including subscriber names, user names, and screen names);
        ii.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
        iii.   Local and long distance telephone connection records;
        iv.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
        v.     Length of service (including start date) and types of service utilized;
        vi.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");
        vii.   Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and
        viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records.

    b.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

        i.     the date and time of the communication, the method of the communication, and the source and destination of the communication – i.e., call detail records - and records of data events across all networks (3G, 4G, 5G)
        ii.    All historical location information, including data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the Account for the time period **September 20, 2023, to present**.  Included is any specialized location data commonly referred to as Network

Element Location Service (NELOS), AriesoGeo, Per Call Measurement Data (PCMD), Real Time Tool (RTT), and/or Timing Advance/TruCall.

    c.   The Provider shall deliver the information set forth above within **7 days** of the service of this warrant and the PROVIDER shall send the information via electronic medium, where feasible. If electronic data is not available, the Provider shall deliver the information by facsimile or United States mail to:

> Bureau of Alcohol, Tobacco, Firearms & Explosives
> 550 Main Street, Ste 8-491
> Cincinnati, OH 45202
> Fax: 513-684-6359

2.   *Prospective Location Information*. The Provider shall provide all prospective location information about the location of the Target Cell Phone described in Attachment A for a period of **thirty days**, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A. To the extent that the location information is within the possession, custody, or control of Provider, Provider is required to disclose the Location Information to the government. In addition, Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

3.   *Prospective Pen-Trap Information*. Pursuant to <u>18 U.S.C. § 3123</u>, the ATF may install and use pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the cell phone identified in Attachment A, including the date, time, and duration of the communication, and the following, without geographic limit:

-   IP addresses associated with the cell phone device or devices used to send or receive electronic communications
-   Identity of accounts that are linked by creation IP address, recovery email, telephone number, or other identifiers
-   Identity of all accounts that are linked to the account by cookies
-  Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the cell phone identified in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN
-   IP addresses of any websites or other servers to which the cell phone device or devices connected
-   Source and destination telephone numbers and email addresses

2

- "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c)

Pursuant to 18 U.S.C. § 3123(c)(1), the use and installation of the foregoing is authorized for **thirty days** from the date of this Order. Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.     Information to be Seized by the Government

1. All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 922(o) (Illegal Possession of a Machinegun).
2. Pursuant to 2703(g), the presence of an agent is not required for service or execution of this warrant.

3

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

☐ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| | ) | Case No.   1:23-mj-998 |
| CELLULAR TELEPHONE ASSIGNED CALL NUMBER (513) 687-5062 | ) | |
| | ) | |
| | ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of      NEW JERSEY _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A (incorporated by reference). This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41. Because the government has satisfied the requirements of 18 U.S.C. § 3122, this warrant also constitutes an order under 18 U.S.C. § 3123.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B, attached hereto and incorporated herein

**YOU ARE COMMANDED** to execute this warrant on or before      **12/19/2023**      *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.      ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to      Hon. Karen L. Litkovitz/Hon. Stephanie K. Bowman      .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☑ for   **30**   days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:      **5:55 PM, Dec 5, 2023**          _Karen L. Litkovitz_
                                                                                  Karen L. Litkovitz
                                                                                  **United States Magistrate Judge**

City and state:   Cincinnati, Ohio

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **(513) 687-5062** (the "Target Cell Phone 2"), whose wireless service provider is CELLCO Partnership DBA Verizon Wireless ("Verizon"), a company whose Registered Agent accepts service of process at 51 ImClone Drive, Branchburg, New Jersey, 088760.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of Verizon, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

**ATTACHMENT B**

**Particular Things to be Seized**

I.    **Information to be Disclosed by Verizon Wireless (the "Provider")**

1. *Historical and Subscriber Information*. To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **September 20, 2023 to present:**

   a. The following information about the customers or subscribers of the Account:

      i. Names (including subscriber names, user names, and screen names);
      ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
      iii. Local and long distance telephone connection records;
      iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
      v. Length of service (including start date) and types of service utilized;
      vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");
      vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and
      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

   b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i. the date and time of the communication, the method of the communication, and the source and destination of the communication – i.e., call detail records - and records of data events across all networks (3G, 4G, 5G)
      ii. All historical location information, including data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the Account for the time period **September 20, 2023, to present**. Included is any specialized location data commonly referred to as Network

Element Location Service (NELOS), AriesoGeo, Per Call Measurement Data (PCMD), Real Time Tool (RTT), and/or Timing Advance/TruCall.

c.   The Provider shall deliver the information set forth above within **7 days** of the service of this warrant and the PROVIDER shall send the information via electronic medium, where feasible. If electronic data is not available, the Provider shall deliver the information by facsimile or United States mail to:

Bureau of Alcohol, Tobacco, Firearms & Explosives
550 Main Street, Ste 8-491
Cincinnati, OH 45202
Fax: 513-684-6359

2.   *Prospective Location Information*. The Provider shall provide all prospective location information about the location of the Target Cell Phone described in Attachment A for a period of **thirty days**, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A. To the extent that the location information is within the possession, custody, or control of Provider, Provider is required to disclose the Location Information to the government. In addition, Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

3.   *Prospective Pen-Trap Information*. Pursuant to 18 U.S.C. § 3123, the ATF may install and use pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the cell phone identified in Attachment A, including the date, time, and duration of the communication, and the following, without geographic limit:

-   IP addresses associated with the cell phone device or devices used to send or receive electronic communications
-   Identity of accounts that are linked by creation IP address, recovery email, telephone number, or other identifiers
-   Identity of all accounts that are linked to the account by cookies
-   Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the cell phone identified in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN
-   IP addresses of any websites or other servers to which the cell phone device or devices connected
-   Source and destination telephone numbers and email addresses

2

- "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c)

Pursuant to 18 U.S.C. § 3123(c)(1), the use and installation of the foregoing is authorized for **thirty days** from the date of this Order. Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.      Information to be Seized by the Government

1. All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 922(o) (Illegal Possession of a Machinegun).
2. Pursuant to 2703(g), the presence of an agent is not required for service or execution of this warrant.

3

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

**Inventory made in the presence of :**

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)